IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LUCEIL A. McKINNEY :
:
v. : Civil Action No. CCB-09-1065
:
FULTON BANK, as successor by merger :
with Resource Bank :
:

...o0o...

# MEMORANDUM

Luceil McKinney has sued Fulton Bank, alleging violations of federal and state law in connection with a loan McKinney received to buy a residential lot in Gambrills, Maryland, and construct a new home thereon. Pending before this court are three motions: the plaintiff's motions for leave to file an amended complaint and for partial summary judgment, and the defendant's motion for partial summary judgment. The issues in this case have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the motion for leave to amend will be denied; the plaintiff's motion for summary judgment will be denied; and the defendant's motion will be granted.

## BACKGROUND

On March 2, 2006, McKinney applied for a construction and permanent loan from Resource Bank to build a home at 2236 Mt. Tabor Road in Gambrills, Maryland 21054 ("Mt. Tabor"). At the time, she was living at 3840 Twin Oaks Drive, Edgewater, Maryland 21037. (Affidavit of Luceil McKinney, Pl.'s Mem. In Support Of Mot. For Partial Summ. J. ("Pl.'s SJ Mem."), Ex. 1 ("McKinney Aff."), at ¶14.) In applying for the loan, she submitted to Resource Bank a purported contract with Mona Design Build ("MDB") for the construction of a home on the Mt. Tabor property, along with MDB's drawings and plans. (Affidavit of O.V. Gillikin on

1

behalf of Fulton Bank, Def.'s Mem. In Opp'n To Pl.'s Mot. For Summ. J. And In Support Of Its Mot. For Summ. J. ("Def.'s Mem."), Ex. 5 ("Gillikin Aff."), ¶7.) Resource Bank's underwriting department and appraiser reviewed McKinney's application and the MDB contract and plans and agreed to provide financing. (*Id*. ¶¶5, 7.)

Resource set forth the terms of the proposed financing in a letter dated April 13, 2006 (Letter from Connie West to Luceil McKinney (April 13, 2006), Def.'s Mem., Ex. 1 (the "Commitment Letter")), although McKinney states she did not see the letter until April 27, 2006, the date of the closing. (*See* Declaration of Luceil McKinney, Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Ex. 1 ("McKinney Decl.").) According to the Commitment Letter, Resource would provide a $997,000 "Construction Loan" to acquire the land and construct the home. (Commitment Letter at 1.) On the "Conversion Date," Resource would convert the Construction Loan to a "Permanent Loan," so long as McKinney had satisfied certain conditions, including having paid in full "all accrued interest and other charges and expenses payable under the Construction Loan." (*Id*. at C-1.) The amount of the Permanent Loan would be equivalent to the outstanding balance on the Construction Loan, up to $875,000. (*Id*. at 1.) The terms of the Permanent Loan would depend on which of various "permanent loan programs" McKinney chose among those "then being offered by Bank and available to" McKinney. (*Id*. at 2.) If she had not satisfied the conditions for conversion on or before the Conversion Date, however, there would be no Permanent Loan, and the Construction Loan would become due and payable in full. (*Id*. at 4-5.)

On April 27, 2006, McKinney accepted and signed the Commitment Letter (*id*. at 5) and executed a Construction Loan Agreement. (*See* Construction Loan Agreement, Def.'s Mem., Ex. 3.) As Resource had stated in the Commitment Letter, the bank agreed to provide the $997,000

Construction Loan and to convert it into a Permanent Loan "if certain conditions are satisfied by Borrower on or before the [conversion date]." (*Id.* ¶A)[1] The conversion date, originally November 1, 2007, was later extended to April 30, 2008. (Gillikin Aff. ¶ 6). The conditions for conversion included having "satisfied all requirements of the Commitment for conversion to the Permanent Loan," having "paid to Lender all accrued interest on the Construction Loan and all interest to accrue on the Permanent Loan through the last day of the month in which the Construction Loan converts to the Permanent Loan," and having executed a "loan modification agreement relating to the conversion of the Construction Loan to the Permanent Loan." (Construction Loan Agreement ¶6.)

On the same day, McKinney executed these documents in addition to the Commitment Letter and Loan Agreement:

1. A Settlement Statement (Pl.'s SJ Mem., Ex. 2);

2. A promissory note payable to Resource Bank in the amount of $997,000 and set to mature on November 1, 2007 (Pl.'s SJ Mem., Ex. 3; Def.'s Mem., Ex. 4);

3. Two deeds of trust: a deed of trust on the Twin Oaks property (Pl.'s SJ Mem., Ex. 5; Def.'s Mem., Ex.7), and a purchase money deed of trust on the Mt. Tabor property (Pl.'s SJ Mem., Ex. 4; Def.'s Mem., Ex. 6), the term "purchase money" having been added to the latter form by the closing attorney (McKinney Aff. ¶12); and

4. Two documents entitled "Notice of Right to Cancel," one for each deed of trust and each stating, "You have a legal right under federal law to cancel this transaction, without cost,

---

[1] The Commitment Letter refers to the date on which the Construction Loan would convert to a Permanent Loan, if McKinney had satisfied the necessary conditions, as the "Conversion Date." (Commitment Letter, Def.'s Ex. 1, at 4.) The Construction Loan Agreement refers to that date as the "maturity date" or, alternatively, the "Completion Date." (Construction Loan Agreement, ¶A.) Fulton Bank, in its affidavit (Gillikin Aff. ¶6), and McKinney in her promissory note (Pl.'s SJ Mem., Ex. 3; Def.'s Mem., Ex. 4), refer to what seems to be the same date as the "maturity date." The parties appear to agree that these three terms all refer to the same date, which was originally November 1, 2007 and was later changed to April 30, 2008. For the sake of clarity, the court will refer to these dates as the "conversion date."

within three business days from whichever of the following events occurs last: (1) the date of the transaction, which is April 27, 2006; or (2) the date you received your Truth in Lending disclosures; or (3) the date you received this notice of your right to cancel" (Pl.'s SJ Mem., Ex. 6; Def.'s Mem., Ex. 8 ("Notice of Right to Cancel")).

McKinney also signed two documents entitled "Certificate (That Customer Does Not Rescind Transaction)," one for each property. (Pl.'s SJ Mem., Ex. 6; Def.'s Mem., Ex. 12, 13 ("Certificates").) Each is dated May 2, 2006, although McKinney asserts that they were actually executed on April 27, 2006, the May 2 date having been written on the forms by the closing attorney on April 27. (McKinney Aff. ¶¶10, 12.) She argues that she "was required" to sign the certificates on the date of closing, rather than waiting until the end of the three-day rescission period, thereby denying her three-day right to rescind. (Pl.'s SJ Mem. at 4.) Fulton responds by pointing to the Certificates, which, as stated, were dated May 2, 2006. The Certificates also state:

> Whereas more than 3 business days have elapsed since the undersigned received the above and foregoing NOTICE OF RIGHT OF RESCISSION and other Trust-in-Lending Disclosures concerning the transaction . . . the undersigned do herewith warrant, covenant and certify that they have not exercised their right to rescind; that they do not wish to and will not rescind said transaction; and that they do hereby ratify and confirm the same in all respects.

Fulton also asserts that its "customary practice and policy" at the time was for the borrower to "return to the settlement agent's office, after the three business day rescission period had expired," to sign a Certificate. (Gillikin Aff. ¶4.) On May 2, 2006, Resource Bank wired the closing funds to the settlement agent, Calvert Title Company, LLC, which then distributed the loan proceeds in accordance with the April 27, 2006 Settlement Statement. (*Id.* ¶5.)

On May 22, 2006, Resource Bank sent McKinney a letter concerning four documents "in regards to [McKinney's] closing" that, according to the letter, "did not come back" to Resource

4

Bank's closing agent in McKinney's "closing package": a "certificate of deposit," a "construction note rider," the "construction loan agreement," and a "construction loan rider." (Letter from Crystal Zelasko to Luceil McKinney (May 22, 2006), Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. 1 ("Zelasko letter").) The letter requested that McKinney sign and return the four documents, which were apparently attached to the letter, although the parties have not provided them to the court. The letter further stated, "At closing you signed a correction agreement that stated you would make changes as they were required." (*Id.*) The letter does not explain what "correction agreement" referred to.

In August 2006, Resource Bank contacted MDB, the contractor listed on the contract McKinney had submitted with her loan application, with a question about property insurance. (Gillikin Aff. ¶8.) MDB's owner informed Resource Bank that it did not have a contract to build a house for McKinney. (*Id.*) (It is unclear from the record where the contract purportedly with MDB, which McKinney provided with her original loan application, came from.) McKinney then entered a new construction contract, with a different contractor, this time for a smaller house. (*Id.*) When Resource Bank received the new contract, it conducted a new appraisal. (*Id.* ¶9.) Because the new contract was for the construction of a smaller house, the new appraisal was $170,000 lower than the original one. (*Id.*)

The decrease in appraised value for the proposed construction altered the amount of the loan for which McKinney was eligible. (*Id*. ¶10.) Thus Resource Bank offered McKinney three options: (i) reduce the loan amount from $997,000 to $840,000; (ii) increase the loan-to-value ratio of the loan, requiring that McKinney purchase private mortgage insurance; or (iii) cap the loan-to-value ratio of the loan, potentially leaving some of the cost of construction not covered by the loan. (*Id.*) McKinney did not accept any of these options. (*Id.*) Rather, she simply failed

5

to make the interest payments that were due beginning on January 1, 2008, and thereafter. (*Id.* ¶11.) The promissory note became due in full on April 30, 2008, the conversion date. (*Id.*) Fulton then foreclosed on the Mt. Tabor property. (*Id.* ¶12.)

On April 6, 2009, McKinney's counsel sent a letter to Fulton Bank's counsel seeking to rescind the April 27, 2006, loan, stating that she was entitled to rescind because the loan "violated several provisions of the Federal Truth in Lending Act and the Maryland Commercial Code." (Letter from Jasen Adams to Jeremy Fishman (April 6, 2009), Pl.'s SJ Mem., Ex. 7.) Her counsel sent a follow-up letter to Fulton on April 24, 2009. (Letter from Jasen Adams to Jeremy Fishman (April 24, 2009), Pl.'s SJ Mem., Ex. 8). That same day, she filed the six-count complaint in this case, asserting claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et. seq.*, the Federal Reserve Board Regulation Z ("Regulation Z"), 12 C.F.R. § 226.1 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C § 2602 *et seq.*, the Maryland Commercial Code ("MCC") , the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*, as well as state common law. Fulton counterclaimed for breach of the promissory note, seeking payment of $263,200, the difference between the amount of the loan ($997,000) and the amount Fulton recovered through the foreclosure sale of the Mt. Tabor property ($733,800), along with interest, late charges, taxes, costs, expenses and attorney's fees. Fulton also filed a partial motion to dismiss. The court granted the motion in part on June 21, 2010, dismissing McKinney's claims alleging negligence and violations of RESPA and the MCPA. *McKinney v. Fulton Bank*, 2010 WL 2559400 (D. Md. June 21, 2010) ("*McKinney I*"). The claims that remained were those McKinney asserted under the MCC (Count II) and Maryland contract law (Count V), seeking damages; and under TILA and Regulation Z (Count

6

IV), seeking rescission of Fulton's security interest in the Twin Oaks property and thereby quiet title to the property.

McKinney filed a motion for leave to file an amended complaint on November 3, 2010, seeking to amend Count IV to add a request for damages. McKinney also moved for summary judgment on Count IV, the request for rescission and to quiet title. Fulton Bank moved for summary judgment on Count V, the breach of contract claim.

## ANALYSIS

**I.     McKinney's motion for leave to file an amended complaint**

When a plaintiff seeks to amend a complaint before trial, the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should deny a motion to amend "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks and citation omitted, emphasis in original); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). One example of a futile amendment is one that would fail to withstand a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

In partially granting Fulton Bank's motion to dismiss, this court dismissed Count I of McKinney's complaint insofar as it sought monetary damages "pursuant to 15 U.S.C. § 1640" because McKinney's claim for damages under § 1640 was barred by that section's one-year statute of limitations. *McKinney*, 2010 WL 2559400 at *3. In an effort to reinsert a claim for damages into the case, McKinney has sought to amend Count IV, the claim seeking rescission of the loan agreement, to request actual damages, statutory damages, attorneys' fees and costs, and

7

"other or further relief as the Court deems appropriate." (Pl.'s Mem. in Support of Mot. for Leave to File an Am. Compl. ("Pl.'s AC Mem."), Ex. 1A.) McKinney argues that amending the complaint would not be futile because, although "Plaintiff's § 1640 TILA claim in Count I is dismissed[,] . . . the Plaintiff is not barred from obtaining . . . § 1640 *damages* available to her under a § 1635 *claim*." (Pl.'s AC Mem. at 3 (emphasis in original).)

McKinney's argument is unavailing. Section 1635, the section of TILA granting a right to rescission, provides, "In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief *under section 1640 of this title* for violations of this subchapter not relating to the right to rescind." 15 U.S.C. § 1635(g) (emphasis added). Section 1635(g) does not create a separate right to statutory damages in cases involving claims for rescission. Rather, it clarifies that receiving a judgment of rescission does not bar a plaintiff from also receiving an award of damages under § 1640, if the plaintiff is entitled to such an award. *See Gerasta v. Hibernia Nat'l Bank*, 575 F.3d 580, 583 (5th Cir. 1978) ("Section 1635 and [§] 1640 are not mutually exclusive remedies; a consumer may be entitled to both rescission pursuant to [§] 1635 and damages pursuant to [§] 1640."). As discussed in this court's earlier opinion, McKinney's claim for damages under § 1640 is barred by the statute of limitations. *See McKinney I*, 2010 WL 2559400, at *3. Any claim to "relief under section 1640 of this title," 15 U.S.C. § 1635(g), would be dismissed for failure to state a claim on which relief could be granted; indeed it already was dismissed for failure to state a claim. Therefore, amending Count IV of the complaint would be futile. McKinney's motion for leave to file an amended complaint will be denied.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *Id.* at 248.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration and quotation marks omitted), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## III. McKinney's motion for partial summary judgment

15 U.S.C. § 1635 provides that a debtor who secures a loan by granting a security interest "in any property which is used as the principal dwelling of the person to whom credit is

extended" has a "right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under [§ 1635] together with a statement containing the material disclosures required under this subchapter. . . whichever is later." 15 U.S.C. § 1635(a). In addition, the creditor must "clearly and conspicuously disclose, in accordance with the regulations of the [Federal Reserve] Board, . . . the rights of the obligor under this section." *Id*.; *see also* 12 C.F.R. § 226.23(b)(1) (requiring that the disclosure be "on a separate document that identifies the transaction and . . . clearly and conspicuously disclose[s]" the borrower's rights). If the creditor fails to provide the required notice, the borrower has a continuous right to rescind for as long as the creditor fails to comply, up to a maximum of three years. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The creditor may also be liable for damages. *Id*. § 1640(a). The notice requirement serves "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). A customer may only waive the three-day right to rescind where a "bona fide personal financial emergency" requires an immediate extension of credit, 12 C.F.R. § 226.23(e)(1) (authorized by 15 U.S.C. § 1635(d)), which neither party argues is relevant here.

TILA's right of rescission and notice thereof applied to the Construction Loan to purchase the Mt. Tabor property and build a house there because, when Resource Bank granted McKinney the loan, McKinney granted Resource a security interest in the Twin Oaks property, her principal dwelling.[2] On April 27, 2006, the date of closing, she signed a form

---

[2] At the motion to dismiss stage, Fulton disputed whether the Twin Oaks home was McKinney's principal dwelling. *See McKinney I*, 2010 WL 2559400, at *3. Fulton no longer appears to dispute this fact. (*See* Def.'s Mem. at 7-8.)

acknowledging her "legal right under federal law to cancel this transaction, without cost, within three business days." (*See* Notice of Right to Cancel.) McKinney argues, however, that the notice she received was deficient because, on the same day she signed the form acknowledging notice of the three-day right of rescission, she "was required" to sign the Certificates affirming that "more than 3 business days have elapsed" and that she did "not wish to and will not rescind" the transaction. (*See* Pl.'s SJ Mem. at 4; Certificates.) Although the date on the form is May 2, 2006, McKinney avers that the May 2 date was written on the forms by the closing attorney, and that she actually signed the form on April 27, 2006. (McKinney Aff. ¶¶10, 12.) This deficiency, McKinney argues, was so obvious that no reasonable jury could find that Resource Bank provided the "clear[] and conspicuous[]" notice required by TILA, 15 U.S.C. §1635(a), and therefore her right to rescind extended up to three years.[3] Because she informed Fulton of her desire to cancel the loan within those three years, she argues, she is entitled to summary judgment on her claim for rescission.

McKinney is not entitled to summary judgment, however, because there is a genuine dispute about when McKinney signed the Certificates. Although she avers that she signed the form on April 27, 2006, the form, which McKinney does not dispute that she signed, is dated May 2. Fulton also notes that the Certificates state that "more than 3 business days have elapsed," and that its "customary practice and policy" at the time was for the borrower to "return to the settlement agent's office, after the three business day rescission period had expired" to sign the Certificate. (Gillikin Aff. ¶4.) Although McKinney is correct that Fulton "was not

---

[3] Resource Bank's alleged failure to provide proper notice of the right to rescind is the only basis on which McKinney argues her right to rescind was extended past the ordinary three-day limit. Although in her complaint she alleged other violations of TILA, McKinney relies exclusively on the alleged "failure to properly notify Ms. McKinney of her right to rescind" in her motion for summary judgment on Count IV. (*See* Pl.'s SJ Mem. at 2.) To the extent McKinney originally claimed that other alleged TILA violations extended her right of rescission, those grounds for extending the right will be considered abandoned.

11

present at the closing and therefore cannot testify as to what may and may not have occurred" at the closing (Pl.'s Reply in Support of Mot. for Partial Summ. J., at 2), Fulton can rely on the date written on the certification itself, as well as the language of the certification and their customary practice and policy concerning such certifications, in opposing McKinney's motion for summary judgment. Because the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," *Scott*, 550 U.S. at 378 (alteration and quotation marks omitted), the court concludes that there is a genuine dispute of fact about when the certification was signed. If she did not sign the form until May 2, she is not entitled to relief on this theory, and because she has not proffered any other theory for why her right to rescind was extended to three years, her motion for summary judgment must be denied.

Moreover, even if she did receive and sign the Certificates on April 27, it does not necessarily follow that she is entitled to relief; she must show that, under the totality of the circumstances, Resource Bank did not "clearly and conspicuously disclose" her right to rescind. Although some courts have held that signing a non-rescission certification on the same day as a notice-of-right acknowledgment renders the notice deficient, *see, e.g.*, *Rand Corp. v. Moua*, 559 F.3d 842, 847-48 (8th Cir. 2009); *Rodash v. AIB Mortgage Co.*, 16 F.3d 1142, 1146 (11th Cir. 1994); *Wiggins v. AVCO Fin. Servs.*, 62 F. Supp. 2d 90, 96-97 (D.D.C. 1999), or at least presents an issue of material fact, *see, e.g.*, *Adams v. Nationscredit Fin. Servs. Corp.*, 351 F. Supp. 2d 829, 834 (N.D. Ill. 2004), others have held that a borrower received adequate notice even if he or she signed a non-rescission certification at the time of the transaction. *See, e.g.*, *Morris v. Lomas & Nettleton Co.*, 708 F. Supp. 1198, 1206 (D. Kan. 1989) ("The purpose of signing the election not to rescind [the] portion of the form prior to the expiration of the three days was to allow the defendant to disburse the funds quickly after the expiration of the three-day period. Plaintiffs

12

still retained their right to rescind during the three-day period and could have exercised it. . . . All parties fully understood the nature of this transaction."); *Contimortgage Corp. v. Delawder*, 2001 WL 884085, *3 (Ohio Ct. App. 2001) ("[N]othing in the statute or administrative regulations expressly prohibit[s] the signing of a post-dated waiver of the right of rescission."); *see also Smith v. Highland Bank*, 108 F.3d 1325, 1327-28 (11th Cir. 1997) (affirming a grant of summary judgment to lender, despite the fact that a certification of non-rescission, although dated four business days later, appeared on the same page of the same form as the notice of right to cancel).

The common thread through each of those cases is that whether a lender provided clear and conspicuous notice of a borrower's right to rescind under TILA depends on a careful analysis of the facts of a particular case. Unlike in *Rodash*, 16 F.3d at 1146, and *Wiggins*, 62 F. Supp. 2d at 94, the acknowledgment and certification here were not on the same page, but rather were on different forms.[4] And unlike in *Rand*, 559 F.3d at 847, and *Adams*, 351 F. Supp. 2d at 832, the parties here dispute whether the forms were signed on the same day. A reasonable factfinder could conclude that McKinney signed the confirmation of non-rescission on May 2, 2006, or that, even if she signed it on April 27, 2006, she received sufficiently clear and conspicuous notice of her right to rescind. Therefore, her motion for partial summary judgment will be denied.[5]

---

[4] Moreover, *Rodash* is of questionable authority, as the Eleventh Circuit limited its holding concerning a notice-of-rescission form to its facts in *Smith*, 108 F.3d at 1328.
[5] Because the court will deny McKinney's motion for summary judgment on Count IV for the reasons discussed above, it need not decide Fulton's alternative argument that McKinney is not entitled to summary judgment because she has not offered to tender the loan proceeds in the event the loan agreement is rescinded.

**IV. Fulton Bank's motion for partial summary judgment**

In Count V of her Complaint, McKinney alleges that Fulton Bank breached the loan agreement by (1) failing to convert the construction loan into a permanent loan, and (2) "[i]mposing additional terms and conditions on Plaintiff after the loan closed." (Compl. ¶50.) Fulton has moved for summary judgment on Count V, arguing that neither allegation constituted a breach of the loan agreement, the former because McKinney failed to satisfy a condition precedent of conversion, and the latter because there is no evidence in the record that Fulton sought to alter any of the terms of the loan agreement.

**A. Failure to convert the loan**

In Maryland, an action for breach of contract requires (1) "the existence of a contractual obligation owed by the defendant to the plaintiff" and (2) "a material breach of that obligation by the defendant." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010) (citing *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). "[W]hen a condition precedent is unsatisfied, the corresponding contractual duty of the party whose performance was conditioned on it does not arise." *B&P Enterprises v. Overland Equip. Co.*, 758 A.2d 1026, 1038 (Md. Ct. Spec. App. 2000).

Under the Loan Agreement, McKinney would only be entitled to conversion of the construction loan to a permanent loan if, on the conversion date, McKinney had paid in full "all accrued interest on the Construction Loan," among other conditions precedent to the bank's obligation to convert the loan. (Construction Loan Agreement ¶6.) According to Fulton's affidavit, as of the conversion date, April 30, 2008, McKinney was at least four months behind on the interest payments she owed under the Loan Agreement, having failed to make any of the payments due on January 1, 2008, and thereafter. (*See* Gillikin Aff. ¶11.) McKinney does not

dispute that she failed to have paid in full the interest that had accrued as of April 30, 2008. Nor does she point to any evidence in the record that she had otherwise satisfied that condition precedent. Because the condition precedent of having paid in full "all accrued interest on the Construction Loan" was unsatisfied, there is no genuine dispute that Fulton's contractual duty to convert the Construction Loan to a Permanent Loan did not arise.

Moreover, although McKinney argues that there is a dispute about the enforceability of the Commitment Letter, the dispute is immaterial. The Commitment Letter, which was dated April 13, 2006, states that the "commitment" would expire in ten days if the borrower had not accepted the financing offer by that time. (Commitment Letter at 5.) McKinney argues that because she did not accept the commitment until April 27, "the Commitment letter is defective and creates a genuine dispute of material fact as to Ms. McKinney's Obligations under the loan." (Pl.'s Opp'n at 2.) The Construction Loan Agreement itself, the enforceability of which McKinney does not dispute, conditions Resource's obligation to convert the loan on McKinney having "paid to Lender all accrued interest on the Construction Loan . . . through the last day of the month in which the Construction Loan converts to the Permanent Loan." (Construction Loan Agreement ¶6.2.) Therefore, the requirement that McKinney have paid all interest that accrued through April 30, 2008, applied irrespective of the enforceability of the Commitment Letter.

In short, there is no genuine dispute of material fact that Fulton never became obligated to convert the Construction Loan into a Permanent Loan.

**B. Imposition of additional terms and conditions**

McKinney alleges that Fulton breached the Loan Agreement by "[i]mposing additional terms and conditions on Plaintiff after the loan closed." (Compl. ¶50.) She argues that when Resource sent its May 22, 2006, letter requesting that McKinney sign and return four documents

15

that "did not come back" to Resource's closing agent in McKinney's "closing package" (Zelasko letter), it "fundamentally altered the terms of the loan documents signed at the closing on April 27, 2006." (Pl.'s Opp'n at 3.) Requesting that she sign and return the documents, McKinney argues, constituted an independent breach of the Loan Agreement.[6]

To defeat a motion for summary judgment, a party "asserting that a fact . . . is genuinely disputed must support the assertion by . . . (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). McKinney did not offer into evidence the documents attached to the May 22 letter or any other evidence that those documents altered the terms or conditions of the Construction Loan; she has not even identified which terms or conditions were allegedly altered. Because there is no evidence in the record that the May 22 letter imposed "additional terms and conditions on Plaintiff," as McKinney alleges, Fulton is entitled to summary judgment on Count V.

## CONCLUSION

McKinney's motion for leave to file an amended complaint will be denied, and her motion for summary judgment will be denied. Fulton Bank's motion for summary judgment will be granted. A separate Order follows.

July 8, 2011
Date

/s/
Catherine C. Blake
United States District Judge

---

[6] Although McKinney's complaint does not specify when or how Resource allegedly imposed "additional terms and conditions on Plaintiff after the loan closed," it is apparent from her brief in opposition to Fulton's motion for summary judgment on Count 5 that it is the May 22 letter she believes imposed additional terms. (*See* Pl.'s Opp'n at 3.)